## ROWE *v.* THE STATE.

1. Where an indictment for perjury predicated upon an affidavit fails to allege that such affidavit was made in any judicial proceeding, it was error, upon the trial of such indictment, to admit in evidence the record of a particular judicial proceeding in which the State contended that the perjury in question had been committed. This is so although the indictment states the existence of such judicial proceeding, and alleges that the matters falsely sworn to in the affidavit were material in that proceeding. In order to render the record of that proceeding relevant upon the trial of the perjury case, the indictment ought to distinctly aver that the false affidavit was made in that identical proceeding, to be used as evidence therein, and that this was known to the affiant.

2. Even if the indictment be sufficient in the respects above indicated, there can be no conviction of the alleged perjury, unless it be proved that in making the affidavit the accused knew it was to be used as evidence in that particular judicial proceeding, and that he made the affidavit for that purpose. The fact that the accused had such knowledge and intention need not appear

upon the face of the affidavit itself, but may be proved by *aliunde* evidence, either circumstantial or direct.

3. Inasmuch as the conviction in the present case was, for the reasons indicated in the preceding notes, manifestly contrary to law, it is unnecessary to deal with the other questions presented in the record.

Argued November 2,—Decided November 9, 1896.

Indictment for perjury. Before Judge Candler. Fulton superior court. September term, 1896.

*Austin & Park*, for plaintiff in error.

*C. D. Hill, solicitor-general,* contra.

ATKINSON, Justice.

The accused was indicted for the offense of perjury, and the indictment charged as follows:

"The grand jurors selected, chosen and sworn in and for said county of Fulton, to wit [then follow the names of the grand jurors], in the name and behalf of the citizens of the State of Georgia, charge and accuse J. J. Rowe, of the county and State aforesaid, with the offense of perjury; for that on the seventh day of August, in the year of our Lord one thousand eight hundred and ninety-five, there was pending in the superior court of Fulton county, said State, a judicial proceeding, to wit, a motion for a new trial on behalf of and by Wm. J. Myers, who had theretofore been convicted of the offense of murder, and the issue or point in question in said judicial proceeding being whether a new trial should be granted to said Wm. J. Myers; on the said seventh day of August, in the year of our Lord one thousand eight hundred and ninety-five, in the county aforesaid, the said J. J. Rowe, after a lawful oath had been properly administered to him by John B. Wheat, notary public, of Fulton County, Georgia, then and there made, swore to and signed an affidavit, in words and effect as follows to wit: 'Georgia, Fulton County. Personally came Jos. J. Rowe, who on oath says: I was in attendance on the last trial of the case of the State against Myers. At one time during the progress of the trial, I was sitting in the gallery directly opposite the door which leads into the room used by the jury. Col. Glenn and Col. Clay, counsel for the prosecution, walked into the jury-

room together, and my recollection is, were in there smoking when the jury retired and walked into the same room. Mr. Clay walked out immediately, but Mr. Glenn lingered and spoke to two and shook hands with one or two of the jury. I was surprised at this and noticed it. Col. Mercier, attorney-at-law, was sitting by me at the time. He had seen the same and called my attention to it and remarked, "There is ground for a new trial now." Col. Glenn seemed to speak to all of the jury, but to shake hands and address remarks particularly to two, and even after all were in the room he lingered for some little time, possibly a minute, and continued his talk while in there.' And the statements contained in the said affidavit, that the jury walked into the jury-room while Col. Glenn (meaning W. C. Glenn) and Col. Clay (meaning A. S. Clay) were in said room, being then and there absolutely false and untrue, and also being then and there material to the said issue in said judicial proceeding, or point in question, and the said statements being then and there wilfully, knowingly, absolutely and falsely sworn to by the said J. J. Rowe, after a lawful oath had been administered to him as aforesaid; and the following statement in said affidavit immediately following the words, 'Mr. Clay (meaning A. S. Clay) walked out immediately' (meaning out of the jury-room), to wit: 'But Mr. Glenn (meaning W. C. Glenn) lingered and spoke to and shook hands with one or two of the jury. I was surprised at this and noticed it. Col. Mercier had seen the same and called my attention to it and remarked, "There is ground for a new trial now." Col. Glenn (meaning W. C. Glenn) seemed to speak to all of the jury but to shake hands and address remarks particularly to two, and even after all were in the room he lingered for some little time, probably a minute, and continued his talk while in there,' and each and every of them being then and there wilfully, knowingly, absolutely and falsely sworn to by the said J. J. Rowe, after a lawful oath had been properly administered to him, as aforesaid; and each and every statement contained in said affidavit to the effect that W. C. Glenn lingered in the jury-room and spoke to, or shook hands with, one or more of the jury, or that W. C. Glenn seemed to speak to all of the jury and to shake hands and address remarks particularly to two, or that he remained in the room after the jury were in there

and continued his talk in there, being then and there absolutely untrue and false, and being then and there material to the said issue or point in question in said judicial proceeding, and the said statements and each and every of them having been wilfully, knowingly, absolutely and falsely sworn to by the said J. J. Rowe, after a legal oath had been properly administered to him, as aforesaid," etc.

Upon the trial of the issue formed under this indictment, the State offered in evidence the following documentary testimony, which purports to be the judicial proceeding referred to in the bill of indictment as that concerning which the statements contained in the affidavit upon which the prosecution in this case is predicated were material.

"The State        Murder,
   *v.*      In Fulton Superior Court,
William J. Myers.     Fall Term, 1894.

The defendant amends his motion for a new trial heretofore filed in this case, and says a new trial should be granted him for the following additional reasons:

21st: Because of the misconduct of the jury, and particularly of two of the jurors, and of the indiscretion of one of the counsel for the State, which consisted in the shaking of hands, conversation and laughter in the jury-room indulged in by said jurors and said attorney for the prosecution during the progress of the trial, as set forth in the affidavit of Joseph J. Rowe and L. N. Mercier, Esq., and of Virgil Jones, Esq., hereto attached and marked respectively Exhibits EE, FF, and GG; said affidavits being further explained by the affidavits of Hon. John W. Nelms, Mr. J. M. Reeves and Mr. Peter Francisco Smith, and ............... also attached, marked Exhibits HH, II, JJ, and GG, and the affidavits of B. P. Myers and William J. Myers (defendant), and of the counsel for the defendant, hereto attached, and marked respectively Exhibits LL, MM, and NN. W. T. Moyers, E. M. & G. F. Mitchell, Virgil Jones, Edward P. Wood, Movant's Attorneys."

To the introduction of this document counsel for the accused objected, upon the ground that the indictment against the accused did not charge that the affidavit, which

was the basis of that indictment, was made in the case of the State *v.* William J. Myers, and upon the further ground that the indictment in the case on trial did not allege that said affidavit was made in any judicial proceeding. This objection was overruled. Upon the trial the affidavit, which is the basis of the prosecution, was introduced in evidence, a copy of such affidavit being as follows:

Georgia, Fulton County: Personally came Joseph J. Rowe, who on oath says: I was an attendant at the last trial of the case of the State against Myers. At one time during the progress of the trial I was sitting in the gallery directly opposite the door which leads into the room used by the jury. Col. Glenn and Col. Clay, counsel for the prosecution, walked into the jury-room together, and my recollection is, were in there smoking when the jury retired and walked into the same room. Mr. Clay walked out immediately, but Mr. Glenn lingered and spoke to and shook hands with one or two of the jury. I was surprised at this and noticed it. Col. Mercier, attorney at law, was sitting by me at the time. He had seen the same and called my attention to it, and remarked, "There is ground for a new trial now." Col. Glenn seemed to speak to all the jury, but to shake hands and address remarks particularly to two, and even after all were in the room, he lingered for some little time, possibly a minute, and continued his talk while in there.                    J. J. Rowe.

Sworn to and subscribed to before me, this 7th day of August, 1895.

John B. Wheat, Notary Public, Fulton County, Ga. Read and considered on the hearing.

Jno. C. Hart, Judge S. Court.

To the introduction of this affidavit in evidence, the accused objected, amongst other grounds, upon the following: It is not entitled in the cause; further, it is not alleged in the indictment that this affidavit was made in this Myers case; further, nor that the accused knew that it was to be so used; further, because it has not been shown to have been tendered or used in any judicial proceeding. It was proved on the trial that the accused signed this affi-

davit, and swore to the facts as therein recited. There was no evidence introduced other than the affidavit upon that subject, and none which showed, or tended to show, that the accused, at the time the affidavit was made, knew or had reason to know, that it was intended to be introduced as evidence upon the trial of the issue described in the bill of indictment.

Many other questions were made in the progress of the trial, but inasmuch as, under the view we take of this case, it will not be necessary to consider them, it would serve no profitable purpose particularly to refer to them.

The trial resulted in a verdict of guilty, and the accused moved for a new trial upon the general grounds, and, amongst others, upon the ground that the court, over his objections as above stated, admitted in evidence that portion of the record of the proceedings in the case of the State v. Myers, which is above copied, and over his objections, likewise above stated, admitted in evidence the affidavit. The motion was overruled, and he excepted.

1. Perjury, under the definition of our code, consists, "in wilfully, knowingly, absolutely and falsely swearing, either with or without laying the hand on the Holy Evangelist of Almighty God, or affirming in a matter material to the issue or point in question, in some judicial proceeding, by a person to whom a lawful oath or affirmation is administered." In order to convict one of perjury, under the definition of that offense, it must be alleged in the indictment and proved on the trial, that the false oath, laid as the basis of the indictment, was taken by him in the course of a pending judicial proceeding. An analysis of this indictment will disclose no allegation that the affidavit in question was taken in the judicial proceeding referred to in the indictment. The indictment alleges that the affidavit was false, and that the facts therein stated are material upon the trial of the issue formed in the judicial proceeding described. It alleges that the accused made the

affidavit, but it does not allege that it was made by him to be used in that particular judicial proceeding. He might. well have demurred to the indictment upon that ground, and the demurrer would have been well taken. He was. not bound to do this, however, inasmuch as the objection to the evidence, when offered in support of the allegation, would be equally effective. When the State, therefore,. offered in evidence the transcript of the record in the case of the State *v.* Wm. J. Myers, and objection was made thereto upon the ground stated above, the court should have sustained that objection and excluded the record; for, as the indictment had not charged the defendant with having made the affidavit in the course of that judicial proceeding, evidence that such a proceeding was really pending, and that the facts stated were material in determining the questions made in that case, was wholly irrelevant. In order to render the record of that proceeding relevant upon the trial of the accused for perjury, the indictment should have distinctly averred that the affidavit alleged to have been false was made in that identical proceeding, to be used as evidence therein, and that this fact was known to the affiant.

2. We think the objections taken by the accused to the introduction of the affidavit which was admitted against. him, were likewise well founded. In order to convict one of perjury, he must not only swear falsely in the judicial proceeding, but he must do so wilfully and knowingly; for if one by inadvertence should make a false affidavit, perjury could not be assigned thereon. The knowledge of the affiant must not only extend to the fact that an oath is being administered to him, but also to the fact that the statements which he makes under oath are to be used in the particular judicial proceeding; for, if one have no knowledge that he is swearing with respect to a matter under judicial investigation, he cannot, in any sense, be said to have sworn wilfully in that proceeding. Knowledge,.

either express or implied, is absolutely indispensable in order to impute to him a purpose wilfully to swear therein. The affidavit, as it was offered in evidence, as we gather from its context, referred to some facts which might have been material upon the inquiry being made in the case to which it relates; but not being entitled in the case, and there being nothing in its statements which would suggest a purpose upon the part of the accused that it should be used upon the trial of the case of the State v. Wm. J. Myers, and there being nowhere in the record any other evidence indicating that such was his purpose in making the affidavit, it should have been excluded. The mere fact that it was not entitled in the cause would not have required its rejection. If it had been accompanied by evidence that the accused knew, or had reason to know, that it was to be used in that proceeding, it would have been admissible. It would have been competent to have proved by *aliunde* evidence, that at the time the affidavit was signed, it was the purpose of the affiant that it should be so used. Unaccompanied, however, by such evidence, the affidavit was inadmissible.

3. It follows, therefore, that the court erred in admitting in evidence both the record to which objection was made, and likewise the affidavit, and it also follows, there being no evidence that at the time the affidavit was made the accused knew that it was to be used as evidence in the case described in the indictment, that the verdict is contrary to law, even treating the indictment as being a sufficient assignment of perjury; and a new trial is accordingly ordered.　　　　　　　　　　*Judgment reversed.*